## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BROOKS KNOLLEY, ANTONIO PITTMAN, and STEVEN MEDECK, individually and on behalf of all persons similarly situated, | Civil Action No.: |
| Plaintiffs, | Complaint -- Class and Collective Action |
| v. | Jury Trial Demanded |
| THE SHADE STORE, | |
| Defendant. | |

## **INTRODUCTION**

Plaintiffs Brooks Knolley, Antonio Pittman and Steven Medeck (collectively, "Plaintiffs") file this Class and Collective Action Complaint against Defendant The Shade Store for unpaid overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), and the laws of the states of California, the District of Columbia, and Maryland, as well as failure to provide rest and meal breaks and unreimbursed expenses under the laws of the state of California. The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## **PARTIES**

1.     Plaintiff Brooks Knolley ("Knolley") resides in Los Angeles, California. From approximately February 2019 through March 13, 2020, Knolley

was employed as an Installer by The Shade Store and worked as an Installer in California. As an Installer for The Shade Store, Knolley's essential job requirements were to travel to customers' homes, install custom-made window treatments for the customers, and remove and dispose of the old fixtures.  As an Installer, Knolley routinely worked approximately two hours of uncompensated overtime each day, if not more, and was required to perform off the clock work at the direction, and primarily for the benefit, of The Shade Store.  Knolley was not paid overtime wages for all hours worked in excess of eight hours per day and/or forty hours per week.

2.    Plaintiff Antonio Pittman ("Pittman") resides in Baltimore, Maryland. Pittman is a former employee of The Shade Store.  Pittman was employed as an Installer for The Shade Store from August 2018 through November 2019 and worked as an Installer in Maryland and Washington D.C.  As an Installer for The Shade Store, Pittman's essential job requirements were to travel to customers' homes, install custom-made window treatments for the customers, and remove and dispose of the old fixtures.  As an Installer, Pittman routinely worked approximately one hour of uncompensated overtime each day, if not more, and was required to perform off the clock work at the direction, and primarily for the benefit, of The Shade Store. Pittman was not paid overtime wages for all hours worked in excess of forty hours per week.

3.    Plaintiff Steven Medeck ("Medeck"), at all relevant times, resided in

2

Laguna, California, and currently resides in Nevada.  Medeck is a former employee of The Shade Store.  Medeck was employed as an Installer for The Shade Store from February 27, 2019, to March 20, 2020, and worked as an Installer in California.  As an Installer for The Shade Store, Medeck's essential job requirements were to travel to customers' homes, install custom-made window treatments for the customers, and remove and dispose of the old fixtures.  As an Installer, Medeck routinely worked approximately three and one half to four and one half hours of uncompensated overtime each day, if not more, and was required to perform off the clock work, at the direction, and primarily for the benefit, of The Shade Store.  Medeck was not paid overtime wages for all hours worked in excess of eight hours per day and/or forty hours per week.

4.    Defendant The Shade Store ("Defendant" or "The Shade Store") is a drapery retailer with its headquarters located at 21 Abendroth Avenue, Port Chester, New York 10573.  The Shade Store launched in 2006 as a website that offered customized window treatments.  Two years later, The Shade Store opened showrooms in New York and San Francisco to promote its products and allow customers see them in person.  Today, The Shade Store sells its custom-made window treatments, including shades, drapery and blinds, online and in approximately sixty (60) showrooms across the country.  The Shade Store offers

installation and free shipping to its customers.

## JURISDICTION & VENUE

5.    Jurisdiction in this case is based on 28 U.S.C. §§ 1331, 1332 and/or 1337. This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs. Jurisdiction over the state law claims asserted herein is pursuant to 28 U.S.C. §1367.

6.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendants are authorized to conduct business and have conducted substantial business in the Southern District of New York, have intentionally availed themselves of the laws of New York, and are subject to personal jurisdiction in New York.

## CLASS DEFINITIONS

7.    Plaintiffs bring this lawsuit pursuant to 29 U.S.C. § 216(b) as an FLSA collective action on behalf of the following collective of potential opt-in litigants:

> all individuals who were employed as an Installer by the Shade Store at any time during the Collective Period in any state (the "FLSA Collective").

8.    Plaintiff Knolley and Plaintiff Medeck bring Counts Three, Four, Five, Six, Seven and Eight of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of themselves and the following class:

> all individuals who were employed as an Installer by the Shade Store
> in the State of California during the time period allowed by the
> applicable statute of limitations (the "California Class").

9. Plaintiff Pittman brings Count Nine of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of himself and the following class:

> all individuals who were employed as an Installer by the Shade Store
> in the District of Columbia during the time period allowed by the
> applicable statute of limitations (the "District of Columbia Class").

10. Plaintiff Pittman brings Counts Ten and Eleven of this lawsuit as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of himself and the following class:

> all individuals who were employed as an Installer by the Shade Store
> in the State of Maryland during the time period allowed by the
> applicable statute of limitations (the "Maryland Class").

11. The California Class, District of Columbia Class and Maryland Class are hereafter collectively referred to as the "State Law Classes." The FLSA Collective and State Law Classes are hereafter collectively referred to as the "Classes."

12. Plaintiffs reserve the right to redefine the Classes prior to conditional certification or class certification, and thereafter as necessary.

## FACTUAL ALLEGATIONS

13. The Shade Store employs hundreds of persons as "Installers" whose essential job requirements are to travel to customers' homes, install The Shade

Store's custom-made window treatments for the customers, and remove and dispose of the old fixtures.

14.    The Shade Store Installers are dispersed across the country in approximately twenty states.

15.    The Shade Store New York headquarters handles all appointment scheduling for the Installers via an app.

16.    Prior to approximately April 2019, The Shade Store compensated many of its Installers, including Mr. Pittman, on a salary basis and paid the salaried Installers an average annual salary of approximately $65,000.   The salaried Installers, like Mr. Pittman, routinely worked approximately one hour of uncompensated overtime each day, if not more, for off the clock work performed at the direction, and primarily for the benefit, of The Shade Store and were not paid any overtime wages prior to April 2019.

17.    At all relevant times, the Installers have performed work involving repetitive operations with their hands, physical skill and energy.  FLSA-covered, non-management employees in production, maintenance, construction and similar occupations such as carpenters, electricians, mechanics, plumbers, iron workers, craftsmen, operating engineers, longshoremen, construction workers and laborers are entitled to minimum wage and overtime premium pay under the FLSA, and are not exempt under the Part 541 regulations regardless of their salary level.

18.     Commencing in or around February 2019 and continuing through April 2019, The Shade Store reclassified the majority, if not all, of its Installers as hourly paid employees and began compensating the Installers at approximately $25 per hour for forty hours per week, plus additional overtime pay at time and a half for up to ten hours per week.  The primary job duties, functions, work schedules and hours of the Installers remained the same both before and after The Shade Store reclassified the Installers as hourly paid employees.

19.     The Installers are required to clock in and clock out using The Shade Store app.  Each Installer's time is submitted daily to The Shade Store's New York headquarters for approval.

20.     The Shade Store's New York headquarters tracks the location of the Installers in real time via GPS.

21.     The Shade Store does not maintain regional offices for its employees. The Installers commute from home directly to the first appointment, which typically is scheduled by The Shade Store's New York headquarters to commence at 8:00 a.m. local time.

22.     At the direction of The Shade Store's New York headquarters, the Installers generally are required to work a shift from 8:00 a.m. to 6:00 p.m., Monday through Friday.

23.     Since approximately April 2019, The Shade Store has paid its Installers

standard hourly rates for the first 40 hours of work, plus overtime pay for up to ten hours per week.

24.    The Shade Store deducts one hour for the Installer's morning commute time each day and the Installers are unable to log in via the app for the first hour of their work.  Many Installers report spending more than one hour and up to three and a half hours commuting on average each morning to their first appointment.

25.    The Shade Store also deducts one hour or more for the Installer's evening commute home each day.  Each Installer is required to clock out daily at the conclusion of the last customer appointment, typically at 6:00 p.m. or later.  The Installer is not compensated for additional work,  and most are not compensated for commute time, after the last customer appointment has concluded.  Many Installers report commuting on average more than two hours traveling home from their last appointment.

26.    As a result of the Installer's appointment schedules, which are determined and distributed by The Shade Store New York headquarters, the Installers' commutes are extraordinary, with many Installers commuting each day two to three hours to the first appointment and two to three hours after the final appointment.

27.    In a January 1999 opinion letter, the Department of Labor ("DOL") considered "whether certain travel time and other activities performed by home-

based employees" who worked in the field were "hours worked" for purposes of the

FLSA. See 1999 DOLWH LEXIS 9 at *1.  The DOL determined that an employer's

policy that paid home based employees for all but one hour of travel time from home

was acceptable under 29 C.F.R. §785.35. See *id.* at *4.  The DOL opined:

> [T]ravel time would not be compensable, unless the time involved is
> extraordinary. For example, where [an employee's] commute to the first job
> site in the morning takes four hours, [the DOL] would consider the greater
> portion of travel time compensable under the principles described in 29
> C.F.R. 785.37. That rule allows a portion of the total commute time to be
> considered non-compensable home-to-work travel. If the employer treated
> three of the four hours as compensable travel, [the DOL] would not question
> such practice. *Id.*

28.    The Shade Store fails to compensate the Installers for all but one hour

of their extraordinary daily commutes.

29.    The Shade Store requires Installers to dispose of work generated

garbage, such as packaging materials from the new product installations and the

hardware and other materials, including old fixtures, which the Installer removes

from customers' homes.  The Shade Store requires disposal of these materials at a

local Shade Store show room with access to a commercial dumpster, or at a public

waste disposal facility, at end of the day following the Installer's last appointment.

The locations of The Shade Store showrooms with dumpsters or public waste

facilities are often more than one-half hour from an Installer's last customer

appointment, and/or require an Installer to travel further from home to dispose of

customer trash.  Because The Shade Store requires the Installers to clock out at the conclusion of the last appointment, the Installers are not compensated for the time spent driving from the last appointment to the local Shade Store showroom to dispose of the work generated garbage.  In many instances, The Shade Store's policy causes the Installer's evening commute to exceed one hour.

30.    Installers are often not compensated for the time spent sorting and disposing of the company-related garbage that has accumulated in the Installer's vehicle throughout the day.  Frequently, Installers avoid incurring additional unpaid travel time by disposing of The Shade Store trash in their vehicles after they have reached home.  Installers have reported spending from fifteen minutes to forty minutes daily removing and disposing of the company-related garbage from their vehicles at their homes or at a showroom location where garbage disposal can occur; time for which The Shade Store does not compensate the Installers.  Installers perform these additional activities of removing and disposing of work generated debris at the direction of, and necessarily and primarily for the benefit of, The Shade Store.

31.    In addition to The Shade Store's requirement that Installers remove and dispose of work generated debris and garbage from the vehicles off the clock, The Shade Store requires Installers to perform additional off-the-clock work without compensation following the end of their daily shift and/or on weekends, including

reviewing their customer appointment schedules for the upcoming week, and when necessary, requesting appointment clarification from headquarters, and/or identifying particular job requirements/needs to headquarters, via telephone or email. Installers perform these additional activities at the direction of, and necessarily and primarily for the benefit of, The Shade Store.

32.    For many Installers, especially those on the West coast, The Shade Store New York headquarters are closed by the end of the Installers' shift. The Installers thus often need to contact The Shade Store New York headquarters early the next morning to discuss upcoming work issues and scheduling. But because The Shade Store company policy designates the first hour of the Installer's work time as unpaid commuting time, the Installers are unable to record their time spent calling and emailing The Shade Store New York headquarters in the morning prior to the arriving at the first customer installation destination. Installers perform these additional activities at the direction of, and necessarily and primarily for the benefit of, The Shade Store.

33.    It is common for The Shade Store headquarters to change the Installer's schedules during the course of the week. Therefore, Installers are required to review their schedules for updates and changes at the end of each day and prior to the commencement of the next shift. This work is also performed off the clock. Installers perform this additional activity at the direction of, and necessarily and

primarily for the benefit of, The Shade Store.

34.    Moreover, while The Shade Store's customized window treatments are usually shipped directly to the customer, sometimes there is a problem with the order and the window treatments either are shipped to the Installer or the Installer is required to pick them up from The Shade Store show room.  When such problems with the orders occur, it is the Installer that delivers the window treatments to the customer for installation.

35.    Installers often receive calls from other employees of The Shade Store outside of their scheduled shifts and off the clock.  Indeed, Plaintiffs received calls and/or emails on the weekends from designers at The Shade Store, which they were often required to respond to off-the-clock.  Installers perform these additional activities at the direction of, and necessarily and primarily for the benefit of, The Shade Store.

36.    As per The Shade Store corporate policy, Installers are required to call the customers on the day of the scheduled appointment prior to their arrival in order to provide an estimated arrival time.  Installers perform this additional activity at the direction of, and necessarily and primarily for the benefit of, The Shade Store.  When the Installer is required to make calls to a customer before he/she is able to clock in, this time performing work related tasks is uncompensated.

37.    The Shade Store also requires the Installers to perform other tasks

integral and indispensable to their job outside of their standard work hours, which at times was also off the clock, such as vehicle maintenance. Each Installer is required to commute by vehicle to the customer installation locations and to dispose of debris generated from the installation by using the vehicle. Whether the Installer uses a company vehicle or his/her own vehicle to commute to the customer locations, the Installer is responsible for vehicle maintenance in accordance with uniform company-wide standards. The Shade Store vehicle maintenance standards require the following:

> Vehicles should not be operated with any defect that would inhibit safe operation.

> Preventive maintenance such as tire rotations, regular oil changes, lubrication and tire pressure/fluid checks determine to a large extent whether you will have a reliable, safe vehicle to drive and support your work activities.

> ***Vehicle Service Guidelines***
> o Vehicle state inspection **Where required by state law**
> o DMV registration renewal **As required by state law**
> o All fluids, tire pressure, belts & hoses to be checked **With your oil change service**
> o Tire change or check due **With your oil change service**
> o Brake change or check due **With your oil change service**
> o Tire rotation **With your oil change service**
> o Wheel alignment **Every 20,000 miles**
> o Oil Change (synthetic only) **Every 7,500 Miles**
> o Milestone service **Every 15,000 miles**
> o All monthly driver logs must be submitted no later than the **5th of every month**
> o Interior and exterior washing **Every two weeks**  Special circumstances may require an additional car wash within the two week cycle

*Interior Maintenance*
Vehicle interior maintenance expectations include:
o Keeping the interior neat and clean at all times
o No smoking of any kind occurring inside the vehicle
o Safely securing all cargo

38.     For the first 60 to 90 days of hire, the Installer is considered a

"trainee" and is required to shadow with other Installers.  During this training

period, the Installer is not provided with a company Vehicle.  Instead, the trainee

Installer is required to drive his/her own vehicle. Further, Plaintiff Medeck was

required to drive his own vehicle to the airport on days that he was travelling by

plane for the Company. The Shade Store routinely fails to reimburse Installers for

gas, mileage and other expenses incurred as a result of driving their own vehicles.

39.     The Shade Store's New York headquarters schedules the Installer's

appointments back-to-back so that in practicality there is not time for meal breaks

or rest periods. As a result of The Shade Store's scheduling of the Installers'

appointments, the Installers lack flexibility with regard to the lunch break, or rest

periods, and their presence at the work sites is indispensable.

40.     On the rare occasion the Installers are able to clock out for a meal

break, The Shade Store app has a feature that does not allow the Installer to clock

back in before 30 minutes has elapsed.  Thus, if the Installer takes a meal break

which is less than 30 minutes, he/she nevertheless is deducted the full 30 minutes

as an unpaid meal period.

41.     Installers have made numerous complaints, often via email, to The
Shade Store management about the excessive and uncompensated commute time,
failure to provide meal and rest periods, and the additional off the clock work that
The Shade Store New York headquarters requires the Installers to perform and for
which they are not compensated.

## PLAINTIFF KNOLLEY'S EXPERIENCE AS AN INSTALLER

42.     From approximately February 2019 through March 13, 2020, Knolley
was employed as an Installer by The Shade Store and worked as an Installer in
California.

43.     In February 2019, Knolley was hired as an hourly-paid installer. As an
Installer, Knolley's essential job requirements were to travel to customers' homes,
install the custom-made window treatments for the customers, and remove and
dispose of the old fixtures.

44.     At all relevant times, The Shade Store headquarters in New York
scheduled all of Knolley's customer appointments on a weekly basis via an app.

45.     At all relevant times, the Shade Store routinely scheduled Knolley's
first appointment for 8 a.m.  Knolley worked a standard shift schedule from 8 a.m.
to 6 p.m., Monday through Friday.

46.     Knolley was paid 40 hours' straight time and up to 10 hours' overtime

at time and a half.

47.    The Shade Store deducted one hour daily from Knolley's shift for his commute from his home to the first customer destination, and Knolley was required to log out each day after completing the last customer installation.

48.    Knolley regularly was required to commute more than one hour, and sometimes two hours per day, from his home to his first appointment.  It was standard for Knolley to leave his home at 6:30 a.m. in order to arrive on time at his first appointment at 8:00 a.m.

49.    Knolley regularly was required to commute more than one hour, and often two hours, after his last appointment, including travel to the Shade Store show room, for which time he was not compensated.

50.    At all relevant times, the Shade Store also required Knolley to perform several tasks integral and indispensable to his job outside of his shift schedule and off the clock, including reviewing updates to his customer appointment schedule prior to the next shift, communicating with management concerning his schedule, receiving and responding to calls and emails from designers, and removing and disposing of work generated debris from his vehicle at the end of the day.

51.    At all relevant times, Knolley spent approximately fifteen minutes off the clock each day reviewing his customer appointment schedule and communicating with The Shade Store management, plus an additional

approximately fifteen minutes each day off the clock for removing debris from his vehicle and garbage disposal.

52.    Knolley was not compensated for off the clock work which was required by The Shade Store and was an integral part of his principal job duties.

53.    Knolley did not receive meal or rest breaks.

54.    Upon information and belief, when Knolley was required to work more than eight hours in a day, but did not exceed forty total hours in a week, he was not paid overtime.

55.    Knolley was not compensated for mileage and/or gas or personal expenses incurred, when, for approximately the first three months of his employment, the company required him to drive his own vehicle to customer locations. Knolley notified management and submitted his gas receipts to The Shade Store human resources but was never reimbursed. The Company denied his request(s) for reimbursement.

### PLAINTIFF PITTMAN'S EXPERIENCE AS AN INSTALLER

56.    Pittman was employed as an Installer for The Shade Store from August 2018 through November 2019 and worked as an Installer in Maryland and Washington D.C.

57.    From August 2018 through April 2019, Pittman was a salaried employee earning $65,000 annually and did not receive any overtime pay. At all

relevant times as described herein, Pittman regularly worked in excess of forty hours per week as an Installer, but was not paid any overtime as a salaried employee.

58.   In April 2019, The Shade Store reclassified Pittman as an hourly employee and compensated Pittman at a rate of $24 per hour. Pittman's job responsibilities and hours did not change.

59.   At all relevant times, the Shade Store headquarters in New York was responsible for scheduling Pittman's installation appointments on a weekly basis via an app.

60.   At all relevant times, The Shade Store routinely scheduled Pittman's first appointment for 8 a.m. Pittman worked a standard shift schedule from 8 a.m. to 6 p.m., Monday through Friday.

61.   Commencing in April 2019, Pittman was paid 40 hours straight time and up to 10 hours overtime at time and a half. The Shade Store deducted one hour daily from Pittman's shift for his commute from his home to the first customer destination.

62.   Pittman was required to log out after completing the last customer installation. The Shade Store paid Pittman for only one-half hour after completing his last customer installation. Pittman regularly was required to commute two hours per day to his first appointment and two hours after his last appointment, including

travel to the Shade Store show room, for which time he was not compensated.

63.    At all relevant times, The Shade Store required Pitman to perform several tasks integral and indispensable to his job outside of his shift schedule and off the clock, including reviewing updates to his schedule prior to the next shift, communicating with management and designers concerning his schedule, including receiving calls from designers on weekends, removing debris and garbage following installations from his vehicle, and routine vehicle maintenance as required by company policy.

64.    In addition, while it was customary for the window treatments to be shipped directly to the customer's home, sometimes a problem with the order would occur which would require Pittman to receive the window treatments and/or be required to pick up the window treatments from The Shade Store showroom. Pittman would then deliver the window treatments to the customer in his vehicle.

65.    At all relevant times, Pittman spent approximately fifteen to thirty minutes off the clock each day reviewing his customer appointment schedule and communicating with management and other employees of The Shade Store, plus an additional sixty to ninety minutes each week off the clock for debris removal, garbage disposal and vehicle maintenance.  Pittman was not compensated for this off the clock work, which was required by The Shade Store and was an integral part

of his principal job duties.

## PLAINTIFF MEDECK'S EXPERIENCE AS AN INSTALLER

66.    From February 27, 2019, through March 20, 2020, Plaintiff Medeck was employed by The Shade Store as an Installer and was compensated at the rate of $25 per hour.

67.    At all relevant times, The Shade Store headquarters in New York scheduled all of Medeck's customer appointments on a weekly basis via an app.

68.    At all relevant times, the Shade Store routinely scheduled Medeck's first appointment for 8 a.m.

69.    The Shade Store deducted one hour daily from Medeck's shift for his commute from his home to the first customer destination, and Medeck was required to log out each day after completing the last customer installation.

70.    Medeck regularly was required to commute up to three and a half hours per day from his home to his first appointment.

71.    In particular, for the first four to five months of his employment with The Shade Store, Medeck would commute approximately two and half to three and half hours each morning from his home to his first appointment.  At that time, Medeck lived in Laguna, California and The Shade Store required him to travel to Los Angeles almost daily.  Medeck's territory was Los Angeles, Santa Monica, and

Hermosa Beach.

72.    The Shade Store scheduled Medeck's first appointment at 8:00 a.m., and he would typically arrive by 7:45 a.m.

73.    The Shade Store permitted Medeck to clock in after approximately the first hour on the road via the app.    However, The Shade Store's New York headquarters frequently required Medeck to check in with them or contact customers with his estimated arrival time prior to Medeck being on the clock.

74.    The Shade Store tracked Medeck's location in real time via GPS.

75.    The Shade Store required Medeck to log out following the conclusion of the final daily appointment.

76.    During the first four to five months of his employment as an Installer with The Shade Store, Medeck regularly was required to commute approximately three to four hours after his last appointment, including commute time to the Shade Store show room for the required garbage disposal, for which time he was not compensated.

77.    As per The Shade Store policy, Medeck was required to dispose of the debris and garbage accumulated daily from the installations at a Shade Store show room.    In accordance with this policy, Medeck would typically dispose of the debris and garbage from his vehicle at The Shade Store show room in Laguna, California,

prior to returning home.

78.    At all relevant times, the Shade Store also required Medeck to perform several tasks integral and indispensable to his job outside of his shift schedule and off the clock, including reviewing updates to his customer appointment schedule prior to the next shift, communicating with management concerning his schedule, and removing debris from his vehicle and garbage disposal following installations.

79.    The Shade Store headquarters assigned Medeck his appointment schedule approximately one week in advance.  However, because the appointment schedule was constantly changing and being updated by The Shade Store headquarters, Medeck was required to review his schedule for updates each evening prior to his next shift.

80.    At all relevant times, Medeck spent approximately fifteen minutes off the clock each day reviewing his customer appointment schedule and communicating with The Shade Store management, plus an additional fifteen to forty minutes each day off the clock for removing debris from his vehicle and garbage disposal.  Mr. Medeck was often required to call his first customer to provide an estimated time of arrival and/or make calls to management at The Shade Store New York headquarters before he could clock-in at the beginning of the day.

81.    Medeck's work day as an Installer typically began at approximately 4:30 a.m. and ended between 7:00 p.m. and 7:30 p.m.  However, Medeck was not

compensated for substantial off the clock work which was required by The Shade Store and was an integral part of his principal job duties.

82.    For approximately the first sixty days of his employment as an Installer, Medeck was a "trainee" and was not assigned a company vehicle. Instead, Medeck had to drive his own car from Laguna, California to Anaheim Hills where he would meet the other Installers, park his car, and join another installer in their truck so he could shadow throughout the day.

83.    Medeck was never reimbursed mileage and/or gas for this time when he was required to drive his own vehicle as a trainee.

84.    Medeck notified management and submitted his gas receipts to The Shade Store human resources but was never reimbursed.

85.    Medeck's car was also damaged during one of the drives when a rock hit and broke the windshield. Although Medeck reported the damage to The Shade Store, he was not reimbursed for the cost.

86.    Further, Medeck was not reimbursed for mileage and/or gas costs incurred when he was required to drive his personal vehicle to Los Angeles International Airport on days when he was required to travel by plane for the Company.

87.    Medeck did not receive meal or rest breaks.  Indeed, prior to November or December 2019, there were no meal breaks for Installers.  Beginning in or around

November or December 2019, Medeck started to have a meal break appear in his preset schedule for between 12-12:30pm.  However, because of the tight back-to-back scheduling of appointments by The Shade Store headquarters, Medeck was almost never able take the meal break.  Moreover, The Shade Store designers and the consulting department could and would override Medeck's schedule and schedule an appointment during his supposed meal break time.  Medeck estimates he received a meal break only about 10 to 12 times during his entire time of employment as an Installer with The Shade Store.

88.    Upon information and belief, when Medeck was required to work more than eight hours in a day, but did not exceed forty total hours in a week, he was not paid overtime.

89.    Medeck complained about his off the clock work, his business expenses not being reimbursed, and his lack of meal and rest breaks to The Shade Store Management, including Brenda Powers, who is based in Long Beach, California and travels to New York headquarters frequently, and Julian Wright, who is based in New York.  But nothing changed as a result of Medeck's complaints to management.

## <u>COLLECTIVE ACTION ALLEGATIONS</u>

90.    Plaintiffs bring this action individually and on behalf of the FLSA Collective defined above.  Plaintiffs and the FLSA Collective Members are similarly situated and Plaintiffs will prosecute this action vigorously on behalf of the FLSA

Collective.

91.    Plaintiffs intend to file a motion pursuant to 29 U.S.C. § 216(b) for an order permitting them to provide written notice of this action to all similarly situated FLSA Collective Members so that they have an opportunity to join this lawsuit.

## CLASS ACTION ALLEGATIONS

92.    Plaintiffs also bring this action as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of the State Law Classes defined above.

93.    The members of each of the State Law Classes are so numerous that joinder of all members is impracticable.

94.    There are questions of law and fact common to each of the State Law Classes that predominate over any questions affecting only individual class members, including, without limitation: whether The Shade Store has violated and continues to violate the wage and hour laws of California, District of Columbia and Maryland through its policy or practice of not paying its non-exempt hourly employees for all overtime hours worked as alleged herein.

95.    The State Law Class Representatives' claims are typical of the claims of the State Law Classes they represent. Plaintiffs' counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one. Plaintiffs Knolley and Plaintiff Medeck are members of the California Class and Plaintiff Pittman is a member of the  District of

Columbia Class and the Maryland Class. Each of these Plaintiffs' claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the State Law Class they seek to represent. Moreover, each of these Plaintiffs' claims are based on the same legal and remedial theories as those of the State Law Class they seek to represent. There are no conflicts between the interests of Plaintiffs and the members of the State Law Class they seek to represent, and the injuries suffered by Plaintiffs are similar to the injuries suffered by the members of the State Law Class they seek to represent.

96.    The State Law Class Representatives designated above will fairly and adequately represent and protect the interests of the State Law Classes.

97.    Class certification is appropriate under FED. R. CIV. P. 23(b)(3) because questions of law and fact common to each of the State Law Classes predominate over any questions affecting only individual members.

98.    Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and

efficient adjudication of this controversy. The members of each of the State Law Classes are readily identifiable from The Shade Store's own employment records. Prosecution of separate actions by individual members of each of the State Law Classes would create the risk of inconsistent or varying adjudications and would establish incompatible standards of conduct for The Shade Store.

99.    A class action is also superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Furthermore, the amounts at stake for many of the members of the State Law Classes, while substantial, are not great enough to enable them to maintain separate suits against The Shade Store on an individual basis.

100.    Without a class action, The Shade Store will retain the benefit of its wrongdoing, which will result in further damages to Plaintiffs and the State Law Classes.  Plaintiffs envision no difficulty in the management of this action as a class action.

## COUNT ONE
**Overtime Violation of the FLSA**
**(On Behalf of all Plaintiffs and the FLSA Collective)**

101.    Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

102.    The Shade Store is an "employer" covered by the minimum wage and overtime requirements set forth in the FLSA.

103.   As hourly paid employees of The Shade Store since approximately April 2019, Plaintiffs and the FLSA Collective worked over forty (40) hours in many workweeks but were not paid overtime compensation under the FLSA for all of those excess hours.

104.   Plaintiffs and the FLSA Collective do not qualify for any exemption from the minimum wage and overtime obligations imposed by the FLSA.

105.   Throughout Plaintiffs' and the FLSA Collective Members' employment, The Shade Store knew that as of April 2019, Plaintiffs and the FLSA Collective were hourly paid employees who were required by The Shade Store New York headquarters to perform work related tasks, off the clock, outside of their standard 8:00 a.m. to 6:00 p.m., Monday through Friday shift, without compensation.  These tasks included daily review of schedules, communicating with managers and designers, removal of work generated debris post-installation from their vehicles, and standard vehicle maintenance as required by company policy. These tasks were integral and indispensable to Plaintiffs' jobs as Installers and were required by, and for the primary benefit of, The Shade Store.  The Shade Store also knew via GPS tracking that the Installers routinely commute, on average, two to four hours per day to and from their homes to the customer locations for delivery and installation of the customized window treatments, but The Shade Store does not compensate Installers for total commute times.  The Shade Store also knew that it

was required to pay overtime wages at the rate of time and a half to Plaintiffs and the FLSA Collective for hours worked over 40 in any workweek. Despite this knowledge, The Shade Store willfully withheld and failed to pay the overtime compensation to which Plaintiffs and the FLSA Collective were entitled.

106.    Pursuant to the FLSA, Plaintiffs and the FLSA Collective are entitled to unpaid overtime at a rate of one and one-half (1 ½) times their hourly wage. Because of The Shade Store's failure to pay such wages was willful pursuant to 28 U.S.C. § 255(a), Plaintiffs and the FLSA Collective are entitled to these wages dating back three years.

107.    The identity of all FLSA Collective Members is readily known to The Shade Store pursuant to its human resource records. Plaintiffs are entitled to review these records and identify the FLSA Collective Members who have a right to be provided with notice and an opportunity to join this collective action.

108.    The exact amount of compensation, including overtime compensation that The Shade Store failed to pay Plaintiffs and the FLSA Collective can be ascertained by reviewing records that are in the possession of The Shade Store and through the use of representative evidence and testimony.

109.    The FLSA requires employers to make, keep, and preserve records of the wages, hours, and other conditions and practices of employment, and to preserve such records. Absent The Shade Store's keeping these records as required by law,

Plaintiffs and the Class are entitled to submit their information about the number of overtime hours worked.

110.   The Shade Store's failure to pay Plaintiffs and the FLSA Collective compensation in accordance with the lawful overtime rates is not based on good faith or reasonable grounds, or a belief that such failure is not in violation of the FLSA. Therefore, pursuant to 29 U.S.C. § 216(b), Plaintiffs and the FLSA Collective Members are entitled to liquidated damages in an amount equal to the compensation and/or overtime which they have not been paid.

111.   Plaintiffs have been required to file this action as the result of The Shade Store's actions in failing to pay proper compensation. As such, Plaintiffs are entitled to attorneys' fees and costs incurred pursuant to 28 U.S.C. § 216(b).

## COUNT TWO
### Misclassification Under the FLSA
### (On Behalf of Plaintiff Pittman and the Collective)

112.   Plaintiff Pittman realleges and incorporates by reference all allegations in all preceding paragraphs.

113.   At all relevant times, The Shade Store has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 § U.S.C. 206(a) and 207(a).

114.   The Shade Store formerly employed Plaintiff Pittman, and employed and/or continues to employ, each of the Collective Action Members, within the

meaning of FLSA.

115.   The Shade Store has and continues to engage in a policy, pattern and/or practice of violating the FLSA, as detailed in this Complaint.  The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq*., apply to The Shade Store.

116.   Plaintiff Pittman has consented in writing to be party to this action, pursuant to 29 U.S.C. § 216(b).

117.   At all relevant times and continuing until approximately April 2019, The Shade Store had a policy, pattern and/or practice of failing to pay overtime compensation to the Installers, including Plaintiff Pittman and other members of the Collective, who The Shade Store wrongly misclassified as salaried employees exempt from overtime pay.

118.   As a result of The Shade Store's willful failure to compensate its Installers, including Plaintiff Pittman and other Collective Action Members who were misclassified as salaried employees exempt from overtime, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek, The Shade Store has violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. § § 207(a)(1) and 215(a).

119.   As a result of The Shade Store's willful failure to record, report, credit and/or compensate its Installers, including Plaintiff Pittman and other Collective Action Members who were misclassified as salaried employees exempt from

overtime, The Shade Store has failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C §§ 211(c) and 215(a).

120.    As a result of The Shade Store's FSLA violations, Plaintiff Pittman, on behalf of himself and other misclassified Collective Action Members, is entitled (a) to recover from The Shade Store his unpaid wages for all of the hours worked by him, as overtime compensation, (b) to recover an additional, equal amount as liquidated damages, and (c) to recover his unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

121.    Because The Shade Store's violations of the FLSA have been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

**<u>COUNT THREE</u>**
**Violation of the California Wage and Hour Law**
**FAILURE TO PAY OVERTIME WAGES**
**(Violation of Labor Code § 510, 1194, 1198, and the applicable Wage Order On Behalf of the California Class)**

122.    Plaintiff Knolley and Plaintiff Medeck re–allege and incorporate all preceding paragraphs as if fully set forth herein and behalf of themselves and the California Class.

123.    Labor Code § 510 and the applicable Wage Order provide that

employees in California shall not be employed more than eight hours in any workday or forty hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.  Specifically, Labor Code § 510(a) requires that: Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

124.   Labor Code § 1194 establishes an employee's right to recover unpaid overtime compensation, and interest thereon, together with the costs of suit, and attorneys' fees.  Labor Code §1198 makes employment of an employee for longer hours than the IWC set or under conditions the IWC prohibits unlawful.

125.   During the class period, Plaintiff Knolley, Plaintiff Medeck and other California Class members have worked more than eight hours in a workday, and/or more than forty hours in a workweek.

126.   During the class period, Defendant has failed to pay Plaintiff Knolley, Plaintiff Medeck and other California Class members the overtime compensation premium for those unpaid hours they have worked in excess of the maximum hours permissible by law as required by Labor Code § 510 and 1198, and the applicable

Wage Order.

127.   By virtue of Defendant's unlawful failure to pay the lawful overtime rate of compensation to Plaintiff Knolley, Plaintiff Medeck and other California Class members, Plaintiff Knolley, Plaintiff Medeck and other California Class members have suffered, and will continue to suffer, damages in amounts which are presently unknown to them, but which exceed the jurisdictional limits of this Court and will be ascertained according to proof at trial.

128.   Defendant acted and are acting intentionally and oppressively toward Plaintiff Knolley, Plaintiff Medeck and other California Class members with a conscious disregard of their rights, or the consequences to them, with the intent of depriving them of property and legal rights and otherwise causing them injury. Defendant failed to pay Plaintiff Knolley, Plaintiff Medeck and other California Class members for all hours worked including the time spent working through meal periods and performing off-the-clock work. To the extent this time worked exceeded eight (8) hours in a day and/or forty (40) hours in a week, Plaintiff Knolley, Plaintiff Medeck and California Class members are entitled to overtime wages.

129.   Plaintiff Knolley, Plaintiff Medeck and other California Class members request recovery of overtime compensation according to proof, interest, attorneys' fees, expenses, and costs pursuant to Labor Code § 1194(a), and Civil

Code §§3287(b) and 3289, as well as the assessment of any statutory penalties against Defendant, in a sum as provided by the Labor Code, the applicable Wage Orders, and/or other statutes.

**COUNT FOUR**
**FAILURE TO PROVIDE MEAL PERIODS**
**(Violation of Labor Code §§ 512, 226.7, and the applicable Wage Order)**
**(On Behalf of the California Class)**

130.   Plaintiffs Knolley and Plaintiff Medeck re–allege and incorporate all preceding paragraphs as if fully set forth herein on behalf of himself and the other members of the California Class.

131.   California Labor Code § 226.7(b) provides, "An employer shall not require an employee to work during a meal or rest period mandated pursuant to an applicable order of the Industrial Welfare Commission".

132.   IWC Order No. 7-2001(11)(A) provides, in pertinent part: "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee."

133.   § 512(a) of the California Labor Code provides, in pertinent part: "[a]n employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than

30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee. An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived."

134.   As alleged herein, Defendant failed to authorize and permit timely and uninterrupted meal periods during the Class Period. Plaintiff Knolley, Plaintiff Medeck and members of the California Class were routinely required to work without a timely and uninterrupted meal break at the direction of Defendant and/or with Defendant's knowledge and acquiescence. Additionally, there was no waiver for meal periods when employees worked shifts of no more than six hours.

135.   By its actions in requiring its employees to work through meal periods and/or its failure to relieve the employees of their duties for their off–duty meal periods, Defendant has violated California Labor Code §§ 226.7, 512 and § 11 of IWC Wage Order No. 7-2001, and is liable to Plaintiff Knolley, Plaintiff Medeck and the California Class.

136.   As a result of the unlawful acts of Defendant, Plaintiff Knolley,

Plaintiff Medeck and the California Class have been deprived of timely off–duty

meal periods and are entitled to recovery under Labor Code §§ 226.7(c), 512 and §

11of IWC Wage Order No. 4-2001, in the amount of one additional hour of pay at

the employee's regular rate of compensation for each workday in which Defendant

failed to provide its employees with timely statutory off–duty meal periods.

137.   Plaintiff Knolley, Plaintiff Medeck and the other members of the

California Class, are entitled to seek and recover reasonable attorneys' fees and

costs pursuant to Labor Code §§ 226.7 and 512.

**COUNT FIVE**
**FAILURE TO PROVIDE REST PERIODS**
**(Violation of Labor Code §§ 226.7 and the applicable Wage Order)**
**(On Behalf of the California Class)**

138.   Plaintiff Knolley and Plaintiff Medeck re–allege and incorporate all

preceding paragraphs as if fully set forth herein on behalf of themselves and the

California Class.

139.   California Labor Code § 226.7(b) provides, "An employer shall not

require an employee to work during a meal or rest period mandated pursuant to an

applicable order of the Industrial Welfare Commission".

140.   IWC Order No. 7-2001(12)(A) provides, in pertinent part: "[e]very

employer shall authorize and permit all employees to take rest periods, which

insofar as practicable shall be in the middle of each work period. The authorized

rest period time shall be based on the total hours worked daily at the rate of ten

(10) minutes net rest time per four (4) hours or major fraction thereof. However, a rest period need not be authorized for employees whose total daily work time is less than three and one–half (3 ½) hours. Authorized rest period time shall be counted as hours worked for which there shall be no deduction from wages".

141.  IWC Order No. 7-2001(12)(B) further provides: "[i]f an employer fails to provide an employee with a rest period in accordance with the applicable provisions of this order, the employer shall pay the employee one (1) hour of pay at the employee's regular rate of compensation for each workday that the rest period is not provided".

142.  As alleged herein, Defendant failed to authorize and permit rest breaks during the Class Period.  Plaintiff Knolley, Plaintiff Medeck and members of the California Class were routinely required to work through rest periods at the direction of Defendant and/or with Defendant's knowledge and acquiescence.

143.  By its actions in requiring its employees during the class period to work through rest periods and/or its failure to relieve the employees of their duties for their rest periods, Defendant violated § 12 of IWC Wage Order No. 7-2001 and California Labor Code § 226.7 and is liable to Plaintiff Knolley, Plaintiff Medeck and the California Class.

144.  Defendant's unlawful conduct alleged herein occurred in the course of employment of Plaintiff Knolley, Plaintiff Medeck and members of the California

Class and such conduct has continued through the filing of this complaint.

145.    As a direct and proximate result of Defendant's unlawful action, Plaintiff Knolley, Plaintiff Medeck and the California Class have been deprived of timely rest periods and/or were not paid for rest periods taken during the Class period and are entitled to recovery under Labor Code § 226.7(c) in the amount of one additional hour of pay at the employee's regular rate of compensation for each workday in which Defendant failed to provide employees with timely and/or paid rest periods.

146.    Plaintiff Knolley, Plaintiff Medeck and the other members of the California Class, are entitled to seek and recover reasonable attorneys' fees and costs pursuant to Labor Code §§ 226.7.

## COUNT SIX

### FAILURE TO FURNISH TIMELY AND ACCURATE WAGE STATEMENTS
**(Violation of Labor Code §226 on behalf of the California Class)**

147.    Plaintiff Knolley and Plaintiff Medeck re–allege and incorporate all preceding paragraphs as if fully set forth herein on behalf of themselves and the other members of the California Class.

148.    California Labor Code § 226(a) provides: "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the

employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee [...], (3) the number of piece–rate units earned and any applicable piece rate if the employee is paid on a piece–rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number, [...], (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee...".

149.   Labor Code § 226(e) provides that an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or $50 for the initial pay period in which a violation of § 226 occurs and $100 for each subsequent pay period.

150.   Plaintiff Knolley and Plaintiff Medeck are informed, believe and thereon allege that at all times relevant, Defendant knowingly and intentionally failed to furnish and continues to knowingly and intentionally fail to furnish Plaintiff Knolley, Plaintiff Medeck and each California Class member with timely

and accurate itemized statements showing the name and address of the employer, all applicable hourly rates in effect and corresponding number of hours, and gross wages earned by Plaintiff Knolley, Plaintiff Medeck and each California Class member, as required by Labor Code § 226(a), in that the premiums owed to Plaintiff Knolley, Plaintiff Medeck and the members of the California Class for untimely or interrupted meal and rest periods were not included in gross wages earned by Plaintiff Knolley, Plaintiff Medeck and the California Class.

151.   Defendant's failure to provide Plaintiff Knolley, Plaintiff Medeck and members of the California Class with accurate itemized wage statements during the California Class period has caused Plaintiff Knolley, Plaintiff Medeck and members of the California Class to incur economic damages in that they were not aware that they were owed and not paid compensation for missed rest periods and on–duty meal periods, and for all hours worked. In addition, Defendant provided inaccurate information regarding hours worked, which masked its underpayment of wages to Plaintiff Knolley, Plaintiff Medeck and the California Class.

152.   As a result of Defendant's issuance of inaccurate itemized wage statements to Plaintiff Knolley, Plaintiff Medeck and members of the California Class in violation of Labor Code § 226(a), Plaintiff Knolley, Plaintiff Medeck and the members of the California Class are each entitled to recover actual damages or penalties pursuant to § 226(e) of the Labor Code.

## COUNT SEVEN
## FAILURE TO REIMBURSE WORK INCURRED EXPENSES
### (Violation of Labor Code §§ 2802)
### (On Behalf of the California Class)

153.   Plaintiffs Knolley and Medeck re–allege and incorporate all preceding paragraphs as if fully set forth herein on behalf of himself and the California Class.

154.   The California Labor Code §§ 2802 requires an employer to "indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer."

155.   The Shade Store is an employer under the California Labor Code.

156.   Plaintiffs Knolley and Medeck and other members of the California Class are current or former employees of The Shade Store.

157.   The Shade Store violated the California Labor Code §§ 2802 by failing to reimburse Plaintiffs Knolley and Medeck and other members of the California Class for necessary expenditures, including gas, mileage and vehicle wear and tear, incurred by Plaintiffs Knolley and Medeck and other members of the California Class in direct consequence of the discharge of their duties as Installers for The Shade Store.

## COUNT EIGHT
## VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW
### (Violation of California's Unfair Competition Law,
### Bus. & Prof. Code § 17200 *et seq*.)
### (On Behalf of the California Class)

158.   Plaintiff Knolley and Plaintiff Medeck re–allege and incorporate all preceding paragraphs as if fully set forth herein on behalf of themselves and the California Class.

159.   § 17200 of the California Business and Professions Code (the "UCL") prohibits any unlawful, unfair, or fraudulent business practices.

160.   Through its action alleged herein, Defendant has engaged in unfair competition within the meaning of the UCL. Defendant's conduct, as alleged herein, constitutes unlawful, unfair, and/or fraudulent business practices under the UCL.

161.   Defendant's unlawful conduct under the UCL includes, but is not limited to, violating the statutes alleged herein. Defendant's unfair conduct under the UCL includes, but is not limited to, failure to pay California Class members wages and compensation they earned through labor provided, and failing to otherwise compensate California Class members for non-compliant meal and rest periods as alleged herein. Defendant's fraudulent conduct includes, but is not limited to, issuing wage statements containing false and/or misleading information about the time the California Class members worked and the amount of wages or compensation due.

162.   Plaintiff Knolley and Plaintiff Medeck have standing to assert this claim because they have suffered injury in fact and has lost money as a result of

Defendant's conduct.

163.    Plaintiff Knolley, Plaintiff Medeck and the California Class seek restitutionary disgorgement from Defendant of monies owed for all hours worked and for unpaid meal and rest period premiums.

164.    Plaintiff Knolley and Plaintiff Medeck have assumed the responsibility of enforcement of the laws and public policies specified here by suing on behalf of themselves and other similarly situated California Class members previously or presently working for Defendant in California. Plaintiff Knolley's and Plaintiff Medeck's success in this action will enforce important rights affecting the public interest. Plaintiff Knolley and Plaintiff Medeck will incur a financial burden in pursuing this action in the public interest. Therefore, an award of reasonable attorneys' fees to Plaintiff Knolley and Plaintif Medeck are appropriate pursuant to Code of Civil Procedure section 1021.5.

### COUNT NINE
**Violation of D.C. Minimum Wage Act Revision Act, D.C. Code § 32-1001 et seq.: Failure to Pay Overtime.**
**(On behalf of Plaintiff Pittman and the District of Columbia Class)**

165.    Plaintiff Pittman re–alleges and incorporates paragraphs 1 through 117 as if fully set forth herein on behalf of himself and the District of Columbia Class

166.    The DCMWA provides that "[n]o employer shall employ any employee for a workweek that is longer than 40 hours, unless the employee

receives compensation for employment in excess of 40 hours at a rate not less than

1 1/2 times the regular rate at which the employee is employed." D.C. Code § 32-

1003(c).

167.   At all relevant times to this action, Pittman, and all others similarly

situated, were "employees" and The Shade Store was their "employers" within the

meaning of D.C. Code Section 32-1002.

168.   The Shade Store violated the DCMWA by knowingly failing to

compensate Pittman and other similarly situated individuals, at a rate not less than

one and one-half times their regular hourly rates for every hour worked in excess

of forty hours in any one workweek.

169.   The Shade Store's violations of the DCMWA were repeated, willful,

intentional, and in bad faith.

## COUNT TEN
**Violation of Md. Wage & Hour Law, Md. Code Lab. & Empl. § 401 et seq.:**
**Failure to Pay Overtime.**
**(On Behalf of Plaintiff Pittman and the Maryland Class)**

170.   Plaintiff Pittman re-alleges and incorporates by reference the

allegations set forth in paragraphs 1-117 as if fully set forth herein on behalf of

himself and the Maryland Class.

171.   Under the MWHL, an employer must "pay an overtime wage of at

least 1.5 times the usual hourly wage" for each hour over forty hours that an

employee works during one workweek. Md. Code, Lab. & Employment, §§ 3-415,

3-420.

172.   At all relevant times, Plaintiff Pittman was a covered employee under the MWHL.  At the time he was hired by The Shade Store, Plaintiff resided in Maryland.  Plaintiff provided installation services on behalf of customers of The Shade Store in Maryland and the District of Columbia.

173.   At all relevant times to this action, The Shade Store was the "employer" of Pittman, and all other similarly situated employees, within the meaning of Section 3-401, and The Shade Store had a gross annual income of more than $400,000.

174.   The Shade Store violated the MWHL by knowingly failing to compensate Pittman, and all others similarly situated, at the rate of one and one-half of their regular hourly rate for every hour worked in excess of forty hours in any one workweek.

175.   The Shade Store's violations of the MWHL were repeated, willful, intentional, and in bad faith.

## COUNT ELEVEN
### Violation of Md. Wage Payment & Collection Act, Md. Code Lab. & Empl. § 3-501 et seq.
### (On Behalf of Plaintiff Pittman and the Maryland Class)

176.   Plaintiff Pittman re-alleges and incorporates by reference the allegations set forth in paragraphs 1-117 as if fully set forth herein on behalf of

himself and the Maryland Class.

177.   The MWPCA provides that an employer must pay each employee "at least once in every 2 weeks or twice in each month." Md. Lab. & Empl. Code § 3-502(a)(1).

178.   Upon cessation of employment, an employer must pay an employee "all wages due for work that the employee performed before the termination of employment, on or before the day on which the employee would have been paid the wages if the employment had not been terminated." Md. Lab. & Empl. Code., § 3- 505(a).

179.   At all relevant times to this action, The Shade Store was the "employer" of Pittman and other members of the Maryland Class, within the meaning of Section 3-501.

180.   The Shade Store violated the MWPCA by knowingly failing to pay Pittman and other members of the Maryland Class for all wages due for work that they performed on behalf of The Shade Store at the time their employment was terminated.  Pittman and other members of the Maryland Class thus have never been fully compensated for the total work they performed during their employment with The Shade Store.

181.   The Shade Store's violations of the MWPCL were repeated, willful, intentional, and in bad faith.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

A. An order permitting this litigation to proceed as a collective action on behalf of Plaintiffs and the FLSA Collective pursuant to 29 U.S.C. § 216(b);

B. Prompt notice pursuant to 29 U.S.C. § 216(b) of this litigation to all FLSA Collective Members;

C. An order permitting this litigation to proceed as a class action pursuant to FED. R. CIV. P. 23(a) and (b)(3) on behalf of each of the State Law Classes;

D. A declaration that Defendant's conduct is in violation of the FLSA and the state wage and hour laws set forth above;

E. Compensatory damages, including minimum wage and overtime pay;

F. For one hour of wages due to Plaintiffs Knolley and Medeck and each California Class member for each work period of more than five (5) hours when they did not receive an uninterrupted thirty (30) minute meal period;

G. For one hour of wages due to Plaintiffs Knolley and Medeck and each California Class member for each work period of more than three and one–half (3 ½) hours when they did not receive an uninterrupted ten (10) minute rest period for each four (4) hours or major fraction thereof worked;

H. For actual damages or statutory penalties under Labor Code § 226(e);

I. Liquidated and punitive damages;

J. For restitutionary disgorgement pursuant to the UCL;

K. Pre-judgment interest;

L.  Attorneys' fees and costs; and

M. Any such further relief as may be just and proper.

<u>JURY DEMAND</u>

Plaintiffs demand a trial by jury as to all claims so triable.

Dated: July 9, 2020                    Respectfully submitted,

**GISKAN SOLOTAROFF & ANDERSON LLP**

*/s/ Catherine E. Anderson*
Catherine E. Anderson, Esq.
Email:  canderson@gslawny.com
90 Broad Street, 10th Floor
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 520-3236

**LAW OFFICE OF**
**ROOSEVELT N. NESMITH, LLC**
Roosevelt N. Nesmith, Esq.
roosevelt@nesmithlaw.com
363 Bloomfield Avenue, Suite 2C
Montclair, New Jersey 07042
Tel: (973) 259-6990
Fax: (866) 848-1368

**THE MARKHAM LAW FIRM**
David R. Markham*
Email: dmarkham@markham-law.com
Maggie Realin*
Email: mrealin@markham-law.com
Lisa Brevard*
Email: lbrevard@markham-law.com
750 B. Street, Suite 1950
San Diego, California 92101

**UNITED EMPLOYEES LAW GROUP**
Walter L. Haines*
Email: walterhaines@yahoo.com
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Tel.: 888.474.7242; Fax: 562.256.1006

Counsel for Plaintiffs, the Collective and Classes

*Pro hac vice* application to be filed.